IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| PEACH STATE LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ILLINOIS UNION INSURANCE COMPANY, and ACE AMERICAN INSURANCE COMPANY, <br><br> Defendants. | CIVIL ACTION <br><br> NO. _____ |

## COMPLAINT

COMES NOW Peach State Labs, Inc., and files this its Complaint against Defendants Illinois Union Insurance Company and ACE American Insurance Company as follows:

## PARTIES

1. Peach State Labs, Inc. ("Plaintiff") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Rome, Floyd County, Georgia.

2. Defendant Illinois Union Insurance Company ("Illinois Union") is a foreign corporation not authorized to do business in the State of Georgia. Pursuant to the Service of Suit Endorsement found in the insurance policy at issue, Illinois

Union may be served by serving its registered agent Saverio Rocca, Assistant General Counsel, ACE USA Companies, at 436 Walnut Street, Philadelphia, Pennsylvania 19106-3703. Based on information and belief, Illinois Union's principal place of business is Chicago, Illinois.

3. Defendant ACE American Insurance Company ("ACE") is a foreign corporation, organized under the laws of Pennsylvania, which is authorized to do business in the State of Georgia, and may be served by serving its registered agent Mark G. Irwin at 500 Colonial Center Parkway, Roswell, Georgia 30076. Based on information and belief, ACE's principal place of business is Philadelphia, Pennsylvania.

4. Illinois Union and ACE are collectively referred to as the Defendants.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendants, pursuant to Georgia's Long-Arm Statute, because Defendants (a) transact business in Georgia; and (b) enter into contracts of insurance covering entities located in Georgia. *See* O.C.G.A. § 9-10-91.

7.      This Court has subject-matter jurisdiction, pursuant to 28 U.S.C. §§ 2201 and 2202, because this is a case of actual controversy in which this Court may declare the rights and other legal relations of and as between Plaintiff and Defendants.

8.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(a), because a substantial part of events giving rise to this action arose in this district and because Defendants conduct regular, continuous, and substantial business throughout Georgia, sell insurance policies to residents of Georgia, and insure risks and property located in Georgia.  Venue is also proper in this Court, pursuant to N.D. Ga., Local Rule 3.1 B., because Plaintiff's principal place of business is in this judicial district and division.

## THE POLICY

9.      Defendants issued[1] Plaintiff a pollution and casualty insurance policy—Policy No. G24912991-002—that included commercial general liability coverage (the "Policy").  A true and correct copy of the Policy is attached hereto as Exhibit A.

---

[1] Conflicting evidence exists as to which Defendant issued the Policy.  By letter dated August 19, 2013, ACE represented to Plaintiff that "ACE American Insurance Company" issued the Policy, while the Policy itself states that Illinois Union is the company that issued the Policy.  Plaintiff therefore names both companies as Defendants.

10. The period of coverage under the Policy is April 1, 2010 through April 1, 2011.

11. The Policy provides a coverage limit of $1,000,000 per occurrence and $2,000,000 aggregate for property damage

12. Plaintiff paid $99,811 in premiums under the Policy, and complied with all of the Policy's terms, conditions, and covenants.

13. Under the commercial general liability coverage of the Policy, Defendants agreed to "pay those sums that [the Plaintiff] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Exhibit A, Section I., Para. 1.a.)

14. The purpose of commercial general liability coverage is to protect a company against damage caused to a third-party's property by one of the company's products.

15. Coverage under the commercial general liability section of the Policy is triggered when "property damage" is caused by an "occurrence." (*Id.*, Section I., Para. 1.b.(1).) Stated differently, the Policy is occurrence-based, meaning that coverage is triggered upon an occurrence, and not when a claim is made.

16. The Policy defines "property damage" as:

    a. Physical injury to tangible property of third-parties, including all resulting loss of use of that property. All

4

> such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property of third-parties that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

(*Id.* Section VII., Para. 35.a.-b.)

17. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* Section VII., Para. 27.)

18. Thus, coverage under the commercial general liability section of the Policy is triggered when an accident occurs that causes property damage to a third-party that Plaintiff becomes obligated to pay.

19. The Policy also includes exclusions from coverage, such as exclusion m, which states in pertinent part:

> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> Property damage to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

(*Id*., Section I, Para. 2.m.)  Thus, for exclusion m to apply, either the property of the third-party must not have been "physically injured," which is what triggers coverage in the first place, or the property must be considered "impaired property."

20. "Impaired property" is defined as

> tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

(*Id*., Section VII., Para. 19.)

## THE CLAIM

21. Plaintiff is a chemical manufacturer that invents and manufactures chemicals that are used by a variety of industries, including the carpet industry.

22. In this instance, Plaintiff manufactured a chemical for the carpet industry that was intended to act as a stain blocker (the "Chemical") when impregnated into carpet.

23. Impregnating carpet with the Chemical is a permanent physical event that forever alters the physical and chemical state of the structure of the carpet's fibers.

24. Plaintiff and non-parties Crypton Carpet ("Crypton") and Signature Carpets ("Signature") developed a business relationship whereby Crypton would purchase the Chemical from Plaintiff, impregnate carpet owned by Signature with the Chemical, and then Signature would sell the impregnated carpet to its customers.

25. In early 2011, Signature began to receive complaints from its customers that "dark spots" were appearing on the impregnated carpet. Signature received its first complaint about the "dark spots" on or about January 29, 2011.

26. When Signature first received complaints from its customers, it had a substantial inventory of carpet—approximately 20,211.16 square yards—that had been impregnated by the Chemical but that had not been sold (the "Inventoried Carpet").

27. The Inventoried Carpet—which is valued at approximately $367,781, less a salvage value of approximately $60,933.48—is unmerchantable and cannot be sold.

28. Soon after Signature received complaints from its customers, Signature notified Plaintiff and Plaintiff agreed to investigate the cause of the "dark spots."

29. Through its investigation, Plaintiff discovered that the "dark spots" were caused by the Chemical's negative reaction when exposed to metal, such as the bottoms of chairs, tables, etc.

30. Signature claimed $306,848.33 in damages related to its property—the Inventoried Carpet—and demanded such amount from Plaintiff.

31. Plaintiff timely notified Defendants, by and through its broker, of Signature's demand related to the Inventoried Carpet.

32. Plaintiff and Defendants exchanged extensive communications and materials regarding coverage under the Policy related to the Inventoried Carpet.

33. In addition to the Inventoried Carpet, Plaintiff has received and, at the time of the filing of this Complaint, is continuing to receive additional claims from Signature and Crypton for stained carpet that was damaged by Plaintiff's Chemical during the Policy period (the "Installed Carpet").

34. Despite Plaintiff's demands for coverage and its explanations that a physical injury has occurred with respect to the Inventoried Carpet and the Installed Carpet, that Signature has suffered a loss of use of the Inventoried Carpet

8

and Installed Carpet, and that the Inventoried Carpet and Installed Carpet cannot be restored by the removal of the Chemical since impregnation is a permanent, physical event, Defendants have declined to provide coverage related to the Inventoried Carpet because either the Inventoried Carpet has not been "physically injured" or exclusion m—the Impaired Property Exclusion—applies.

35. Notwithstanding Defendants denial of coverage related to the Inventoried Carpet, Plaintiff has paid Signature $306,848 for the damage caused to Signature's property—the Inventoried Carpet—by the Chemical.

36. On November 26, 2013, Plaintiff notified Defendants of its intent to seek bad faith damages under O.C.G.A. § 33-4-6 if Defendants did not pay Plaintiff's claim related to Inventoried Carpet within sixty (60) days.

37. Despite Plaintiff's demand, Defendants have failed to pay Plaintiff's covered claim.

## COUNT ONE:  BREACH OF CONTRACT

38. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-37 above.

39. Plaintiff is insured under the Policy issued by Defendants that was in effect during the events giving rise to the covered property damage related to the

Inventoried Carpet, which triggered Defendants' duty to defend and indemnify Plaintiff.

40. Plaintiff, by and through its broker, sent timely notice of the property damage related to the Inventoried Carpet that is covered under the Policy to Defendants and has complied with all provisions of the Policy.

41. No exclusions of the Policy apply to the claim asserted by Plaintiff related to the Inventoried Carpet.

42. Defendants have an immediate duty to defend and indemnify Plaintiff for the property damage to the Inventoried Carpet.

43. Defendants' failure to honor their coverage obligations is a breach of the Policy.

44. Plaintiff has sustained and will continue to sustain substantial losses as a direct and proximate result of Defendants' breach of the insurance contract, including being deprived of the benefits of the Policy for which substantial premiums were paid, for which Defendants are liable, in an amount to be established at trial.

## COUNT TWO: DECLARATORY JUDGMENT

45. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-44 above.

46. As set forth above, Plaintiff has sustained and will continue to sustain substantial damages because of Defendants' failure to defend and indemnify Plaintiff fully for its claim for coverage related to the Inventoried Carpet and the Installed Carpet under the Policy. The Policy obligates Defendants to defend and indemnify Plaintiff for all of its covered losses.

47. No exclusions in the Policy apply to Plaintiff's claim related to Inventoried Carpet or its claim related to the Installed Carpet.

48. Defendants have failed to defend and indemnify Plaintiff for its loss to the full extent required by the Policy.

49. An actual case and controversy exists between the parties concerning their respective rights under the Policy.

50. Plaintiff seeks a declaratory judgment to define the rights and other legal relations of Plaintiff and Defendants under the Policy with respect to the claim submitted by Plaintiff to Defendants for coverage related to the Inventoried Carpet and the Installed Carpet.

51. Specifically, Plaintiff seeks a declaratory judgment declaring that

(a) coverage exists under the Policy;

(b) no exclusion applies;

(c) Defendants have an immediate duty to defend and indemnify Plaintiff for the entire amount due under the Policy; and

(d) Defendants have a continuing duty to indemnify Plaintiff concerning future claims involving carpet impregnated by the Chemical during the policy period.

## COUNT THREE – STATUTORY DAMAGES FOR BAD FAITH REFUSAL TO PAY

52. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-51 above.

53. On November 26, 2013, Plaintiff sent a statutory demand letter to Defendants, demanding that Defendants fulfill their legal obligations under the Policy.  This letter informed Defendants that, if they refused to pay the $306,848.33, Plaintiff would assert a claim under O.C.G.A. § 33-4-6 for all available damages and relief.

54. Upon the date of filing this Complaint, more than sixty (60) days have passed since Plaintiff's November 26, 2013 demand letter.

55. Defendants have acted in bad faith by failing to pay Plaintiff's insured losses without any reasonable, substantial, or legitimate legal basis to deny coverage.

56. Defendants' bad faith failure to pay Plaintiff's insured losses has caused Plaintiff expense, loss, and injury in addition to the amount claimed under the Policy.

57. Pursuant to O.C.G.A. § 33-4-6, Plaintiff is entitled to statutory penalties, in an amount to be determined by a jury, of up to 50% of Defendants' total liability under the Policy related to the Inventoried Carpet and the Installed Carpet, plus the attorneys' fees Plaintiff has incurred in this lawsuit.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

(a)  enter judgment in favor of Plaintiff and against Defendants on Count I of the Complaint and award Plaintiff all compensatory damages permitted by law in an amount sufficient to compensate Plaintiff for all losses sustained as result of Defendants' breach of the Policy in an amount to be proven at trial;

(b)  enter a declaratory judgment in favor of Plaintiff and against Defendant on Count II of the Complaint declaring that Plaintiff's claim related to Inventoried Carpet and Installed Carpet is covered

under the Policy and order that Defendant has an immediate duty to indemnify Plaintiff for the entire amount available under the Policy, and for such other covered losses occurring between April 1, 2010 and April 1, 2011;

(c)  enter judgment in favor of Plaintiff and against Defendant on Count III of the Complaint awarding Plaintiff up to an additional 50% of the total insured loss for the claim that Defendants refused to pay in bad faith, plus the attorneys' fees incurred by Plaintiff in pursuing recovery in this lawsuit;

(d)  award Plaintiff its costs and interest on all amounts awarded as damages, in an amount to be calculated in accordance with law;

(e)  award Plaintiff its attorneys' fees and costs;

(f)  award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

Respectfully submitted this 14th day of March, 2014.

        **BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

        /s/ J. Anderson Davis
        J. ANDERSON DAVIS
        Georgia Bar No. 211077
        /s/ A. Franklin Beacham III

P.O. Box 5007        A. FRANKLIN BEACHAM III

Rome, Georgia  30162-5007
(706) 291-8853
(706) 234-3574 (fax)
adavis@brinson-askew.com
fbeacham@brinson-askew.com
lcarter@brinson-askew.com

Georgia Bar No. 043743
/s/ Lee B. Carter
LEE B. CARTER
Georgia Bar No. 595903

*Attorneys for Plaintiff Peach State Labs, Inc.*